*Richmond.*

## BOARD OF SUPERVISORS OF LOUISA COUNTY V. PROFFIT ET ALS.

January 20, 1921.

Absent, Sims, J.

1. APPEARANCES—*What Amounts to a General Appearance—General Appearance Waives Defects in Service.*—Where defendant in a suit in equity for an injunction made no special appearance, but filed four demurrers, which challenged the merits of the bill generally, on the grounds that there was no allegation that complainants were without an adequate remedy at law, and for want of equity appearing upon the face of the bill, the filing of these general demurrers constituted a general appearance, contesting the case upon its merits, and therefore the manner of service of process, or the entire lack of it, became unimportant and immaterial.

2. EMINENT DOMAIN.—*Streets and Highways—Method of Condemning Land for Highways.*—There are two methods, in Virginia, as the law now is, by which the boards of supervisors may acquire lands for public highways. They may at their election either proceed in the circuit court under the general statute authorizing the exercise of the right of eminent domain, (Code of 1919, § 4360, *et seq.*) or under the general road law (Code of 1919, § 1977, *et seq.*), vesting jurisdiction in the boards of supervisors to exercise that power in proceedings for the establishment of highways, subject to appeal to the circuit court and ultimately to the Supreme Court of Appeals.

3. EMINENT DOMAIN PROCEEDINGS.—*Dismissal of Condemnation Proceedings by Board of Supervisors.*—Under the general eminet domain statute a board of supervisors has the right to dismiss the proceeding in the circuit court for the condemnation of land for the highway at any time before any rights have vested. Code of 1919, section 4387.

4. EMINENT DOMAIN PROCEEDINGS. — *Vacation — Dismissal — Final Judgment—Reinstatement.*—The eminent domain statute (Code

of 1919, sec. 4361) vests the circuit court judge with the same jurisdiction and authority in vacation as in term time; and an order of the court dismissing the proceeding is a final judgment; and where after such order the court undertook to reinstate the proceeding upon its common-law docket, its action was invalid; for if that final order had been erroneous the proper method for its correction would be by writ of error.

5. EMINENT DOMAIN.—*Highways—Dismissal of Proceedings Under the General Statute and Institution of New Proceedings Under the General Road Law—Injunction—Adequate Remedy at Law —Case at Bar.*—The board of supervisors of a county instituted proceedings under the general eminent domain statute (Code of 1919, sec. 4360, *et seq*). But while this proceeding was pending the supervisors ordered its dismissal and began proceedings for the condemnation of the same land under the general road law. (Code of 1919, sec. 1977, *et seq.*) Upon a bill by the landowners an injunction was granted, enjoining the board from proceeding under the general road law, and directing them to proceed under the general eminent domain act.

*Held:* In the absence of evidence of bad faith on the part of the board of supervisors, that the circuit court should have sustained the demurrer to the bill praying an injunction, because of lack of equity appearing upon its face; that the board of supervisors had the option to proceed under either of the statutes involved; that the rights of the landowners were fully protected under both statutes, and might be asserted at law; and that the intervention of a court of equity was unauthorized and unnecessary for the protection of any of their rights.

Appeal from a decree of the Circuit Court of Louisa county. Decree for complainants. Defendant appeals.

*Reversed.*

The opinion states the case.

*Bibb & Rhodes,* for the appellants.

*Gordon, Gordon & Crank,* for the appellees.

PRENTIS, J., delivered the opinion of the court.

The controlling facts necessary for the determination of this appeal are these: Under the supervision of the State Highway Commissioner and with the proceeds of county bonds issued for the purpose of road construction, the Board of Supervisors of Louisa county were constructing a public highway. It being deemed wise to change the location of the road in many places, it became necessary, if the plan was to be pursued, to condemn a right of way for the road through the property of W. F. Proffitt and others, the appellees. Being unable to purchase the land deemed necessary the supervisors, pursuant to the statute regulating the exercise of the power of eminent domain (Pollard's Code, sec. 1105-f, now appearing as Code 1919, sec. 4360, *et seq.*), instituted the proper proceeding for the purpose of condemning the land needed for such roadway, and in furtherance of their purpose also to condemn the soil to the depth of one and one-half feet upon a designated acre of adjacent land of the appellees, located outside of the proposed roadway, such soil to be used in the construction of the proposed road. This proceeding progressed until on November 28, 1919, the commissioners who had been appointed to assess the damages filed their report. It appears therefrom that they estimated $500 to be the proper amount to be allowed for the land to be taken, and $500 additional as the resulting damages to the residue of the land. Pending the expiration of the thirty days during which, under the statute, the report must lie in the clerk's office for exceptions—that is, on December 2, 1919—the supervisors, acting under section 944-a of Pollard's Code, being the general road law of the State, now appearing as Code 1919, secs. 1977 to 1984, inclusive, entered an order appointing viewers to view the proposed route over such land and make report. At this meeting the board directed its counsel, the Commonwealth's attorney of Louisa county, to dismiss the pending condemnation proceeding which had been pre-

viously instituted. Thereupon, such order of dismissal was entered on December 6th, and on the same day the viewers, who had been appointed four days before, made their report, under the general road law. The board took up consideration of this report of the viewers on December 8th, entered an order establishing the road as reported by the viewers, and directed summons to issue against the appellees to appear before the board on December 22nd to show cause, if any they could, why the road should not be established as located by the viewers. It appears that in this second proceeding under the general road law, the viewers made a slight change in the route of the proposed road by eliminating a slight curve, and the proceeding itself differed in its purpose from the one first instituted under the eminent domain statute, in that it did not contemplate the condemnation of any adjacent soil for road purposes. In this latter proceeding the statute appears to have been properly pursued—at least, there is no suggestion to the contrary.

Upon the advice of counsel, the appellees did not appear on December 22nd, the day to which they had been summoned; and thereupon the board entered an order adopting the route reported by the viewers, but declined to adjudicate the amount of the pecuniary damages, and proceeded under the statute to appoint commissioners for the assessment of such damages. On December 26th, before these commissioners had reported, the appellees filed their bill for an injunction before the judge of the Circuit Court of Louisa county, reciting the facts stated, and upon the preliminary hearing the Commonwealth's attorney appeared for the supervisors and filed several demurrers to the bill. The judge granted a temporary injunction, enjoining the board of supervisors and their agents, as well as the commissioners appointed by them, from proceeding further under the general road law for the establishment of the road.

At the following January term the board moved the court to vacate the temporary injunction and to dismiss the bill, which motion was overruled, and thereupon the court entered its final decree January 12, 1920, perpetuating the injunction and directing the supervisors to litigate the questions involved in the original proceeding under the general statute regulating the exercise of eminent domain, unless they determined to abandon the road. It is from this decree that this appeal is taken.

[1] It is assigned as error that the trial court erred in overruling the demurrers and in perpetuating the injunction.

It is argued for the supervisors that the demurrer should have been sustained because no process had been served upon the board of supervisors of Louisa county, as such and that therefore the board was not properly before the court. The notice was served upon the Commonwealth's attorney. We deem it unnecessary to say more about this criticism of the proceeding than that it is unnecessary to determine whether such a service, under the statute (Code 1919, sec. 2686), is sufficient or not, because the defendant made no special appearance, and filed four other demurrers, which challenged the merits of the bill, generally, to the effect that there was no allegation that the complainants were without an adequate remedy at law, and for want of equity appearing upon the face of the bill. The filing of these general demurrers constituted a general appearance, contesting the case upon its merits, and therefore the manner of service of the process, or the entire lack of it, becomes unimportant and immaterial. *Harvey* v. *Skipwith,* 16 Gratt. (57 Va.) 414; *New River Mineral Co.* v. *Painter,* 100 Va. 509, 42 S. E. 300; *Lane Bros.* v. *Bauserman,* 103 Va. 146, 48 S. E. 857, 106 Am. St. Rep. 872; *N. & W. Ry. Co.* v. *Sutherland,* 105 Va. 549, 54 S. E. 465.

[2] The decisive question is whether the court of equity

had any jurisdiction to entertain the bill or to issue such an injunction.

It is conceded by counsel for the appellees that the board had the right to abandon the proceedings first instituted, if done in good faith; and this is unquestionably true, except where there may be some special statute forbidding such abandonment.    It is claimed, however, that this abandonment of the first proceeding was not done in good faith, and several cases are cited in which it has been held that a municipal corporation may not, after having proceeded under the statutes regulating the exercise of the right of eminent domain, abandon such a proceeding merely because the damages are unsatisfactory, and with the intent to commence a new one for the condemnation of the same property for the same purpose, among them, *Rogers* v. *City of St. Charles*, 3 Mo. App. 41; *Robertson* v. *Hartenbower*, 120 Ia. 410, 94 N. W. 857; *Chicago, etc., R. Co.* v. *Chicago*, 143 Ill. 641, 32 N. E. 178, and other cases which it is unnecessary to note.

It is not doubted that this is a correct doctrine, but we cannot agree that it has any application to this case, which is controlled by Virginia statutes which afford adequate remedies at law for the protection of every substantial property right.

Indeed, the precise question here involved may be regarded as settled in this State by the case of *Kemper* v. *Calhoun*, 111 Va. 428, 69 S. E. 358.    In that case a proceeding had been instituted for the establishment of a public road, before an amendment of the special act which conferred jurisdiction upon a board of supervisors to condemn property for public roads.    At the time of the institution of that original proceeding the circuit court had exclusive jurisdiction of the subject.    The amended act transferring jurisdiction in road cases from the circuit court to the supervisors had in it this section:

"All petitions for the establishment of new roads or bridges which may be pending in the circuit court of said county on the day this act becomes effective shall be heard and disposed of by said court as if this act had not been amended." Laws 1908, c. 345.

It was there contended that this provision made it mandatory upon the circuit court to determine the rights of the parties with respect to the establishment of this particular road, denied any jurisdiction to the supervisors with reference thereto, and hence that a dismissal for the purpose of prosecuting the same proceeding before the supervisors was a fraud upon the jurisdiction of the circuit court. This court disposed of this contention thus: "In this view we cannot concur. The object of the saving clause in the act with respect to petitions for the establishment of roads then pending in the circuit court was to enable the persons who had instituted those proceedings to prosecute them to a conclusion without a change of forum. It was not intended to take from such persons the power to procure a dismissal of those proceedings. The case stood in the circuit court as if the new act had not been passed. If, therefore, the petitioners had the right to dismiss the proceedings before the act of March, 1908, such right was in no way affected or impaired by that act. The law is well settled that a man can ordinarily dismiss his suit at pleasure upon the payment of costs." And the court held that the complainant in the first proceeding in the circuit court had the right to dismiss it, that it did not appear that the defendants were thereby prejudiced, oppressed, or deprived of any just defense or substantive right; and that they could make every defense before the board of supervisors which they could have made before the circuit court, and have their rights as fully protected.

The two general statutes here involved differ materially in many particulars. (a) The proceedings are commenced

in different tribunals—that is, under one statute, before the circuit court; under the other, before the board of supervisors.  (b) The procedure differs also in important particulars.  For instance, under one statute, the board from its own information and upon its own initiative determines that the property is needed for public uses, and the chief vital question to be determined by the circuit court is the value of the property thus to be taken under the right of eminent domain; whereas, under the other statute, viewers must be first appointed by the board to examine and report both as to the necessity for and the location of the proposed highway, and upon appeal the circuit court is required to hear the case *de novo*, and is required to ascertain "and by its order determine, first, whether said road ought to be established at all, and if so, where located; second, if established, the amount of compensation to which such proprietor is entitled, and shall certify the same to the said board of supervisors, who shall proceed to carry out the judgment of the court; * * *" Code 1919, sec. 1980. (c) The rights of the parties litigant differ under the two statutes, for under the general road law a number of inquiries must be made, among others, whether any yard, garden or orchard, will have to be taken, whereas under the eminent domain statute, there is no such implied directory restriction or inhibition upon the condemnor.

[2-4] There are two methods, then, in Virginia, as the law now is, by which the boards of supervisors may acquire lands for public highways. They may at their election either proceed in the circuit court under the general statute authorizing the exercise of the right of eminent domain, or under the general road law vesting jurisdiction in the boards of supervisors to exercise that power in proceedings for the establishment of highways, subject to appeal to the circuit court and ultimately to this court.  Bearing in mind that the right of the board to dismiss the proceeding in the

circuit court under the eminent domain statute at any time before any rights have vested is absolute, expressly conferred by statute (Code 1919, sec. 4387), it is clear that no right of the appellees was invaded by the exercise of that right in this case. If, however, any right had been invaded, the defendants had the right of appeal. The eminent domain statute (Code 1919, sec. 4361), vests the circuit court judge with the same jurisdiction and authority in vacation as in term, and when on the 6th of December the court, upon the motion of the board, dismissed the first proceeding, that was a final judgment, and when the circuit court undertook, as it did in the decree appealed from, to reinstate that proceeding upon its common law docket, its action was invalid, for if that final order had been erroneous the proper method for its correction would be by writ of error.

It is difficult to perceive upon what ground the charge that the board of supervisors acted in bad faith is based. They are sworn public officials, charged with the protection of the interests of the public. The statute had vested them with jurisdiction over the public roads, and with guardianship of the public funds. If after having commenced the proceeding in the circuit court they, in the exercise of their official discretion, decided that it would be for the interest of the county to abandon that proceeding for any reason appearing to them sufficient, it is not for the courts, in the absence of any evidence other than the facts appearing in this case, to sustain the charge of bad faith. It seems to us that they have only exercised the option which is clearly conferred by the two statutes, under either of which they could lawfully proceed to a final conclusion of the litigation, and the appellees have no just cause for complaint, because their property rights are fully protected by both statutes, and under either they are entitled to the final judgment of the same court for their determination.

3

[5] Without further discussion of other questions which are raised in the argument, we are clear in our view that the circuit court should have sustained the demurrer to the bill, because of lack of equity appearing upon its face; that the board of supervisors have the option to proceed under either of the statutes involved; that the rights of the appellees, the land owners, are fully protected under both statutes and may be asserted at law; and that the intervention of the court of equity is unauthorized and unnecessary for the protection of any of their rights. Therefore, this court will enter a decree, sustaining the demurrer and dismissing the cause for lack of equity appearing upon the face of the bill.

*Reversed.*