### Richmond

THE CITY OF NORFOLK v. THE COUNTY OF NORFOLK.

March 9, 1953.

Record No. 4055.

Present, All the Justices.

The opinion states the case.

*Jonathan W. Old, Jr., Leighton P. Roper,* for appellant.

*A. O. Lynch, Major M. Hillard, James N. Garrett, James G. Martin and Sons,* for appellee.

SPRATLEY, J., delivered the opinion of the court.

The City of Norfolk complains of certain rulings and orders of the lower court in an annexation proceeding instituted by it against the County of Norfolk in 1949.

The facts and background surrounding the litigation may be briefly summarized as follows:

On May 10, 1949, the City of Norfolk adopted an ordinance providing for the extension of its corporate limits by the annexation of certain territory lying in Tanners Creek and Washington Magisterial Districts, in the County of Norfolk. The several members of the Board of Supervisors of Norfolk County were served with notice that the City would, on June 13, 1949, move the Circuit Court of Norfolk County, or the judges designated to hear the case, for an order authorizing and declaring the annexation of the territory described in the ordinance. Judge Kennon C. Whittle of the Seventh Judicial Circuit and Judge Clyde H. Jacob of the Circuit Court of the City of Norfolk were designated to sit with Judge E. L. Oast of the Circuit Court of Norfolk County to hear the case. Code of Virginia, 1942 (Michie) § 2958.

The trial court convened on June 13, 1949, and this proceeding, hereinafter referred to as the 1949 case, was docketed. Thereupon, the County of Norfolk appeared and filed a demurrer to the sufficiency of the ordinance. There was then pending in the Circuit Court of the County of Norfolk another proceeding wherein the City of South Norfolk was seeking to annex a portion of the territory in the County of Norfolk which was embraced within the area sought to be acquired by the City of Norfolk. The City of Norfolk moved that its proceeding be consolidated with the annexation proceeding instituted by the City of South Norfolk and heard by a court composed of all the judges designated to hear the two proceedings. The motion was denied, and subsequently the demurrer of the County of Norfolk was overruled. Since the proceeding of South Norfolk was instituted prior to that of the City of Norfolk, the proceeding of the latter was continued until that of South Norfolk had been heard and determined. South Norfolk was successful in its suit, and obtained an order allowing it to annex the territory it sought.

The City of Norfolk was thus confronted with the necessity

of either amending its proceeding by omitting its allegations as to the necessity and expediency of annexing the territory which South Norfolk had acquired, or commencing another proceeding for the annexation of territory it still desired. It followed the latter course. On April 17, 1951, it adopted an ordinance in which it set out its desire to annex the same territory as that described in its ordinance of May 10, 1949, less that portion which had been annexed by the City of South Norfolk. At the same time it also expressly repealed the ordinance of May 10, 1949. The City of Norfolk promptly gave the County of Norfolk due notice that it would, on June 18, 1951, move the Circuit Court of Norfolk County for an order authorizing and declaring the annexation of the territory described in the new ordinance. This proceeding will be hereinafter referred to as the 1951 case.

On June 18, 1951, Judge Walter T. McCarthy was designated to sit with Judges Oast and Jacob in the 1951 case, and, on the same day, also named to take the place of Judge Kennon C. Whittle, (who had become a member of this Court) to sit with Judges Oast and Jacob in the 1949 case. Code of Virginia, 1950, § 15-152.9.

Thus, the City of Norfolk had two annexation cases pending against Norfolk County, in the Circuit Court of Norfolk County, at the same time, and the same three judges were authorized to dispose of each of the cases.

On June 18, 1951, the City of Norfolk moved to dismiss its 1949 case on the ground that the ordinance authorizing and directing its institution had been repealed. The County of Norfolk objected and the motion was overruled. On the same day, the 1951 case was docketed, and the City of Norfolk moved that it be set for trial. The County objected, and asked that the 1951 case be not heard until the 1949 case had been heard and determined. The court sustained the motion of the County, and the 1951 case was continued generally.

At the September, 1951, session of this Court at Staunton, the City of Norfolk filed its petition for a writ of mandamus directing the judges presiding in the two cases to enter an order dismissing the 1949 case and to proceed to hear the 1951 case.

On October 8, 1951, we entered an order denying the writ on the ground that "mandamus does not lie to grant the relief prayed."

On December 1, 1951, the annexation court convened to hear the 1949 case. Thereupon, the City of Norfolk moved, first, that it be allowed to withdraw its motion for annexation filed in the 1949 case and to suffer a non-suit therein. Upon objection by the County of Norfolk, the motion was overruled. The City then moved that it be allowed to elect whether it would try, first, its 1949 case or its 1951 case. The County objected and this motion was overruled. The court then fixed the 6th day of May, 1952, for the hearing and determination of the 1949 case.

On May 6, 1952, the court, without having heard any evidence, entered a final order which reads as follows: "It appearing to the Court that the ordinance under which these proceedings were instituted has been duly repealed by the Council of the City of Norfolk by ordinance adopted April 17, 1951, and effective May 17, 1951, the Court doth adjudge, order and decree; that the Court doth refuse to annex any property to the City of Norfolk in this cause." The City objected and excepted to the judgment on "the grounds that the repeal of said ordinance affords no basis for the refusal to annex the territory described therein, or any part thereof, and upon the further ground that this proceeding should have been continued, as moved this day by the City of Norfolk, to June 28, 1952, on which date the annexation act adopted by the General Assembly of 1952*, shall have become effective, or to some later date."

The 1949 and 1951 cases are entirely separate proceedings, and the latter case is still pending in the lower court. However, the ordinance in the 1951 case is a part of the record in this proceeding, and the orders of the trial court on June 18, 1951, and December 1, 1951, referring to both cases, show that it considered that it could, when convened, pass upon motions in either or both cases.

On appeal, the City of Norfolk contends that the lower court erred in: (1) Refusing to dismiss its 1949 case; (2) Refusing to

---

* By Acts of Assembly, 1952, chapter 328, page 627, *et seq.*, the General Assembly repealed §§ 15-125 to 15-152.1, both inclusive of Article 1 of Chapter 8, Code of Virginia, 1950, and enacted new provisions relating to annexation, by adding new sections numbered as §§ 15-125.2 to 15-152.28, both inclusive.

Some significant and pertinent changes are set forth in § 15-152.14 relating to the right of a city to decline to accept annexation on the terms and conditions imposed by the court; in § 15-152.16 with reference to the correction of technical or procedural defects or errors; and in § 15-152.25 with reference to the limitation of time within which successive proceedings for annexation may be brought, and the effect of the new Act upon proceedings pending on June 28, 1952.

permit it to suffer a non-suit; (3) Refusing to permit it to elect whether it would try the 1951 case first; and (4) Entering a final order refusing to allow the City to annex any territory, without a hearing on the merits.

On the other hand, the County of Norfolk argues that in an annexation proceeding, the plaintiff is not entitled to a dismissal of the cause without prejudice, or to take a non-suit, without the consent of all parties of record, by virtue of §15-137, Code of Virginia, 1950; that the 1949 and 1951 cases were separate causes and not before the same court; that the proceedings in the 1951 case cannot be considered by this court; that the trial court was correct, both in refusing to allow the City of Norfolk to elect which case it would try and in refusing to continue the 1949 case until June 28, 1952, in order that it might have the advantage of the 1952 enactment of the General Assembly; and that since the City of Norfolk had voluntarily repealed the 1949 ordinance, it could not introduce any evidence and the decision on the merits was justified.

██ In our view of the case, it is only necessary to consider the first two assignments of error, since we are of opinion that the lower court erred, in refusing to sustain the motion of the City of Norfolk to dismiss its 1949 case, and in denying the motion for a nonsuit. Consequently, the court erred in entering the order of May 6, 1952, indicating a disposal of the case on the merits.

The City had full right to repeal its 1949 ordinance. The repeal was effective before there was any hearing on the merits of the proceeding based thereon. Nothing had been done in the 1949 case, other than to overrule a formal demurrer. No evidence had been taken and the case had not been set for trial. The ordinance was not in effect on June 18, 1951, when the City of Norfolk moved that the proceeding be dismissed. Annexation under the ordinance had become a dead issue, as dead as if it had never been adopted. The City could not possibly prevail under it. The 1951 case presented the only live issue before the Circuit Court of Norfolk County.

In the absence of statute or rule of court, the matter of dismissing an action, or of taking a nonsuit, is controlled by the common law. 27 C. J. S., Dismissal and Nonsuit, §6, page 159; 17 Am. Jur., Dismissal, Discontinuance and Nonsuit, §13, page 64.

██ The right of a plaintiff to dismiss a case prior to the

decision on the merits before the rights of other parties have attached or their substantive rights have been affected has long been generally recognized in Virginia.

In *Kemper* v. *Calhoun*, 111 Va. 428, 69 S. E. 358, proceedings were instituted in the Circuit Court of Augusta County for the establishment of a public road under a special road law, which conferred exclusive jurisdiction upon the said court in such a matter. The road board to whom the matter was referred filed a report in 1907, which was recommitted because of an irregularity. In March, 1908, a second report was filed recommending the establishment of the road and ascertaining the amount of damages to be paid the several landowners. Process was awarded against the landowners and exceptions were filed by some of them. Nothing further was done in the matter until May, 1909, when the petitioners moved to dismiss their petition. The motion was sustained, over the objection of the landowners, and the proceeding dismissed.

It appeared that the Act in effect at the time that proceeding was instituted was amended by another special Act approved March 14, 1908, (Acts 1908, page 607) the vital difference between the Acts being that under the last one mentioned, jurisdiction to establish roads was taken from the Circuit Court and vested in the Board of Supervisors of the County. About the time petitioners made their motion to dismiss their proceeding in the Circuit Court, they filed a petition under the new Act before the Board of Supervisors of the County, praying for the establishment of the same road theretofore asked for in the Circuit Court.

The Act of March 14, 1908, contained the following provision:

"12. All petitions for the establishment of new roads or bridges which may be pending in the circuit court of said county on the day this Act becomes effective shall be heard and disposed of by said court as if this Act had not been amended."

The landowners contended that the above provision of the new Act made it mandatory upon the Circuit Court to determine the rights of the parties, and denied to the Supervisors any jurisdiction in the matter, and that a dismissal for the purpose of prosecuting the same proceeding before the Supervisors was a fraud upon the jurisdiction of the court.

In affirming the action of the lower court in rejecting these contentions, we said:

"In this view we cannot concur. The object of the saving clause in the act with respect to petitions for the establishment of roads then pending in the circuit court was to enable the persons who had instituted those proceedings to prosecute them to a conclusion without a change of form. It was not intended to take from such persons the power to procure a dismissal of those proceedings. The case stood in the circuit court as if the new act had not been passed. If, therefore, the petitioners had the right to dismiss the proceedings before the act of March, 1908, such right was in no way affected or impaired by that act. The law is well settled that a man can ordinarily dismiss his suit at pleasure upon the payment of costs." (111 Va. at page 430).

*Board of Supervisors* v. *Proffit,* 129 Va. 9, 105 S. E. 666, involved principles and facts similar to those in the above case. There were two methods by which the board of supervisors of a county might then acquire land for public highways. At their election, they could either proceed by condemnation in the exercise of the right of eminent domain, or proceed under the general road law, (Code of 1919, § 1977, *et seq.*) which vested jurisdiction in the supervisors for such purpose. The Board of Supervisors of Louisa County first proceeded under the eminent domain statutes. Commissioners appointed in that proceeding filed a report fixing the amount to be awarded the landowners. Pending the expiration of the time during which their report was required to lie in the clerk's office for exceptions, the supervisors entered an order appointing viewers to view the proposed routes over the lands in question, and make report. At the same time, they directed their counsel to ask for a dismissal of the condemnation proceeding. An order of dismissal was accordingly entered by the court. The viewers appointed in the second proceeding made their report. The landowners, in an equity suit, then obtained a permanent injunction against the further prosecution of the second proceeding, and an order which directed the supervisors to litigate their first proceeding. Upon appeal, we reversed, holding that the first proceeding was properly dismissed.

Quoting from *Board of Supervisors* v. *Proffit, supra,* 129 Va., at page 15, we said: "The law is well settled that a man may

ordinarily dismiss his suit at pleasure upon the payment of costs.''

Applying this rule, we then said, 129 Va., at page 17:

''It is difficult to perceive upon what ground the charge that the Board of Supervisors acted in bad faith is based. They are sworn public officials, charged with the protection of the interests of the public. The statute had vested them with jurisdiction over the public roads, and with guardianship of the public funds. If after having commenced the proceeding in the circuit court they, in the exercise of their official discretion, decided that it would be for the interest of the county to abandon that proceeding for any reason appearing to them sufficient, it is not for the courts, in the absence of any evidence other than the facts appearing in this case, to sustain the charge of bad faith. It seems to us that they have only exercised the option which is clearly conferred by the two statutes, under either of which they could lawfully proceed to a final conclusion of the litigation, and the appellees have no just cause for complaint, because their property rights are fully protected by both statutes, and under either they are entitled to the final judgment of the same court for their determination.''

The procedural circumstances in each of the above two cited cases were very much like those in the present case, except that the proceedings in the former cases had gone much further before motion was made for their dismissal. In each of these cases, the landowners had obtained awards; but this was held not to affect the right of the petitioners to dismissals.

Section 8-220, Code of Virginia, 1950, provides in part that: ''A party shall not be allowed to suffer a nonsuit unless he do so before the jury retire from the bar.'' Thus, the plaintiff, in an action where no counter-claim has been filed, and the rights of a defendant are not prejudiced thereby, may suffer a nonsuit at any time before the case has been submitted to the jury and they have retired from the bar, or before the case is submitted to the court. *Harrison* v. *Clemens*, 112 Va. 371, 373, 71 S. E. 538. ''Manifestly, it (a nonsuit) is unsuited to pure appellate procedure.'' *Gemmell* v. *Svea Fire Ins. Co.*, 166 Va. 95, 97, 184 S. E. 457.

In *Harrison* v. *Clemens, supra,* the right of plaintiffs to suffer a nonsuit was involved. There plaintiffs filed a petition

praying for a peremptory writ of mandamus against the Commissioner of Roads of Loudoun County to compel him to open a certain road. An interested party intervened, and in the course of the argument at the hearings a misunderstanding between counsel developed as to the terms of a stipulation theretofore entered into. Plaintiffs asked leave to withdraw their petition and suffer a nonsuit. Their motion was overruled on the ground that it came too late. Upon appeal, we said this:

"We are of opinion that this was error. To enter a nonsuit has been recognized as a matter of right under the law and practice in Virginia from a very early date down to the present time. The statute, section 3387, (§ 8-220, Code 1950) recognizes this right, and only fixes the stage at which a plaintiff is precluded from taking a nonsuit—to-wit, when the case has been submitted to the jury and they have retired from the court room.

\* \* \* \* \* \*

"In 4 Minor's Inst. (2d ed.), (783), 867, the author says: 'The nonsuit is resorted to in our practice when the plaintiff finds himself unprepared \* \* \* or for any other reason.'

\* \* \* \* \* \*

"In *Pullman Palace Car Co.* v. *Central Transportation Co.*, 171 U. S. 138, 43 L. ed. 108, 18 Sup. Ct. 808, the opinion holds that, in order to authorize a denial of the plaintiff's motion to discontinue a suit, there must be some plain legal prejudice to the defendant other than the mere prospect of future litigation rendered possible by the discontinuance." (112 Va., at pages 373, *et seq.*)

■ The County of Norfolk contends that the foregoing rule is not applicable in an annexation proceeding, because of the factors involved in that action, and especially because of the proviso contained in the last sentence of § 15-137, Code of Virginia, 1950.

Section 15-137 of the Code reads as follows:

"Appeals; how heard.—An appeal may be granted by the Supreme Court of Appeals, or any judge thereof, to either party from the judgment of the court and the appeal shall be heard and determined without reference to the principles of demurrer to evidence, the evidence being considered as on appeal in chancery cases. Costs in the circuit court shall be awarded as the said court shall determine. The costs in the Supreme Court

of Appeals shall be awarded to the party substantially prevailing; provided that in any case by consent of all parties of record the motion to annex may be dismissed at any time before final judgment on appeal."

The proviso must be considered in the setting in which it is found. It is a part of a sentence which deals with costs in the Supreme Court of Appeals. Its terms are permissive, not restrictive. It does not prohibit the dismissal of an annexation case; but allows its dismissal at a time when that right would not otherwise exist. Manifestly, after a writ of error or an appeal is granted, the plaintiff in the court below is not entitled to the absolute right to dismiss his original proceeding or suffer a nonsuit in this court. The proviso only makes it clear that such a case may be dismissed in this court after a decision on the merits in the lower court. Both the subject of the section and the language of the statute, indicate clearly that the legislature was primarily concerned with appellate proceedings.

In *Callaway* v. *Harding,* 23 Gratt. (64 Va.) 542, 548, decided in 1873, we said:

"There is no rule of construction by which a proviso to one section of an act can be applied to another section, unless it manifestly appears, by reference to the whole act, that it was the intention of the Legislature that such proviso should limit the operation of other sections, than that to which it is appended."

See also *Norfolk etc. Co.* v. *White,* 113 Va. 102, 106, 73 S. E. 467, and *Jordan* v. *South Boston,* 138 Va. 838, 845, 122 S. E. 265.

In 50 Am. Jur., Statutes, §438, at page 459, this is said:

"The natural and appropriate office of a proviso is to modify the operation of that part of the statute immediately preceding the proviso, or to restrain or qualify the generality of the language that it follows. Indeed, the presumption is that a proviso in a statute refers only to the provision to which it is attached, and, as a general rule, a proviso is deemed to apply only to the immediately preceding clause or provision. It should be confined to what precedes, unless it is clear that it was intended to apply to subsequent matter."

In 59 C. J., Statutes, §640 (b), at page 1090, we find this:

"The operation of a proviso is usually and properly confined to the clause or distinct portion of the enactment which im-

mediately precedes it, and does not extend to or qualify other sections, unless the legislative intent that it shall so operate is clearly disclosed; * * *."

Paraphrasing the language used in the foregoing Virginia cases, we think it may here be fairly said that it is difficult to see how the City of Norfolk can be justly charged with acting in bad faith. Its council, charged with the duty of protecting the interests of the city, was vested with the right to institute annexation proceedings in the exercise of their official discretion. If, after having commenced the first proceeding, it found that it could not be successfully prosecuted because a portion of the territory originally desired had been acquired by another city, and the allegations of its ordinance with respect to the necessity of acquiring such territory were no longer tenable, it then abandoned that proceeding and instituted a new one appropriate to the changed circumstances, it is not for us to say that such action constituted bad faith. The 1951 proceeding was substituted for the 1949 proceeding, as a matter of necessity, because of circumstances beyond the control of the City of Norfolk. It seems to us that it exercised the only option open to it under the circumstances.

The rights of the County of Norfolk are not necessarily prejudiced by a dismissal of the 1949 case. It is not deprived of any just defense or substantive right in contesting the annexation of its territory. It is not deprived of the benefit of the preparation it made for the defense of the 1949 proceeding. The mere inconvenience of double litigation, under the circumstances here, cannot be allowed to deprive the City of Norfolk of its right to abandon and to dismiss its first action.

For the foregoing reasons, the decree complained of must be reversed and set aside because of the error of the trial court in denying the motion of the City of Norfolk to dismiss its 1949 annexation petition and to be allowed to take a nonsuit, and this court will enter the decree the lower court should have entered, permitting the City of Norfolk to withdraw its said petition, as of June 18, 1951, at the costs of the said City, without prejudice to the right of the City to prosecute its 1951 case. The City of Norfolk will recover its costs against the County of Norfolk, incident to the prosecution of this appeal, subsequent to June 18, 1951.

*Reversed and final decree.*