Evel v. City of Utica.

---

No. 21,742.

C. EVEL, *Appellant,* v. THE CITY OF UTICA et al., *Appellees.*

SYLLABUS BY THE COURT.

1. CITIES OF THIRD CLASS—*Obtaining Water Supply—Land Outside Corporate Limits Condemned.* For the purpose of obtaining a water supply a city of the third class may, when necessary, condemn land situated within or without its corporate boundaries, under the authority conferred in section 1942 of the General Statutes of 1915.

2. SAME—*Obtaining Water Supply—Earlier Statutes Not Repealed.* Another method for the appropriation of land for waterworks by cities is provided in chapter 208 of the Laws of 1872, as amended by chapter 38 of the Laws of 1883. The later act did not repeal the earlier one, and, as both systems are in existence, the power of appropriation may be exercised under either of them.

Appeal from Ness district court; ALBERT S. FOULKS, judge. Opinion filed October 12, 1918. Affirmed.

*A. W. Wilson,* of Ness City, *Elrick C. Cole,* and *William Osmond,* both of Great Bend, for the appellant.

*Lorin T. Peter,* of Ness City, *W. H. Russell,* and *Frank U. Russell,* both of La Crosse, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: The question upon which the parties herein divide is whether the proceedings taken by the authorities of Utica, a city of the third class, towards the condemnation of land lying outside of the city for waterworks, are valid.

The city proceeded under the provisions of the third-class-city act, which provides that private property may be taken for public use for railroads, market houses and market places or "for any other necessary purpose." It prescribes the procedure for condemnation, authorizing the appointment of five disinterested householders of the city to assess the compensation, and providing that an appeal from their decision may be taken to the district court. (Gen. Stat. 1915, § 1942.) The steps that were taken by the city conform to the requirements of this act, but it is contended that the appropriation of property for waterworks outside of the city was not within the contemplation or authority of the statute. It conceded that authority for the compulsory appropriation of private property for a public use must either be expressly granted or reasonably implied from the powers expressly granted. It is conceded and has been decided that the power to purchase and hold property for this purpose does not carry with it the power to obtain it by condemnation. (*Enterprise v. Smith,* 62 Kan. 815, 62 Pac. 324.) In dealing with the question of supplying water to the inhabitants, the legislature has authorized a city of the third class to enact such ordinances as are necessary for the health of the people therein. (Gen. Stat. 1915, § 1908.) In 1871 it was provided that the cities of that class in making regulations to secure the general health of the people might purchase and hold necessary land for waterworks within or without the city. (Gen. Stat. 1915, § 1937.) In the same session of the legislature the provisions already referred to were enacted, under which the city was proceeding to obtain land for waterworks. It

provides in express terms for the appropriation of private property for public use without any restriction as to the place where it may be obtained. No one questions that the power to condemn for a public use embraces the supplying of water, which is indispensable to the health, comfort, and convenience of the people of the city. Granting the contention of the plaintiff, which is supported by the authorities he cites (*Coldwater v. Tucker,* 36 Mich. 474; *Farwell v. City of Seattle,* 43 Wash. 141), that the authority to condemn must be derived from some statute which expressly or impliedly permits the condemnation, we have here a statute which in broad terms gives the power to condemn property regardless of municipal limits. While the rule is that statutes conferring the power of eminent domain are to be construed strictly, the construction should never be so rigid as to defeat the purpose sought to be accomplished by the legislature. The principal power must, of course, be expressly given, and there go with it all the necessary incidents of that power. As an incident of the power conferred in this case, the city authorities may go wherever it is practicable and necessary to obtain the supply of water for the people of the city. It is an acknowledged fact that water is obtained in most cities from places outside of the municipal limits, and the legislature, no doubt, had this fact in mind when the power of condemnation was conferred. It is equally well known that purer and better water can be obtained some distance away from the territory occupied by the people of the city. The legislature must therefore have known that in many of the cities it would be impossible to secure a supply of water within the municipal limits and, having given the general power without restriction as to location, the court cannot insert a limitation into the statute by judicial construction. As showing that the legislature understood that waterworks have been and would be established beyond the city limits, we have the statutory provision that cities of this class may build pipe, power, light and telephone lines for its own use between the city limits and the location of any waterworks or other public utility owned and controlled by the city, and to that end may exercise the right of eminent domain on any lands within five miles of the city. (Gen. Stat. 1915, §§ 865, 866.) It must be held, we think, that

the grant of power, made as it has been without limitation as to the corporate boundaries, should be interpreted as applying to the condemnation of land outside, as well as inside, the city, that may be necessary to effect the legislative purpose. It has been held by the supreme court of West Virginia that the general power conferred upon a city to acquire land by condemnation for waterworks, in the absence of a limitation, carried with it the necessary implication of authority to take land inside or outside of the city. (*White v. Romney,* 69 W. Va. 606.)

Attention is called to another act passed in 1872, and amended in 1883, by which land may be obtained for waterworks in cities of any class, and by a different method. The statute appears to have been omitted from recent compilations of the laws, but it does not appear to have been repealed, and no reason is seen why the powers conferred in it may not be applied. (Laws 1872, ch. 208, as amended by Laws 1883, ch. 38, Gen. Stat. 1901, §§ 7904-7909, Gen. Stat. 1915, note, p. 177.) This act provides that cities of the first, second and third class shall have power to condemn rivers not navigable and to divert the waters therefrom, and also to condemn and appropriate land for waterworks. The proceeding under this act is to be initiated by petition to the judge of the district court, who is authorized to appoint three commissioners to make the condemnation and assess the damages. It is provided that the commissioners so chosen shall follow, with slight exceptions, the procedure for the condemnation of land for right of way of railroads. It expressly provides that land outside of the city may be taken for waterworks and, while it was passed after the enactment of the eminent-domain provision of the third-class-city act of 1871, it does not follow that that act is repealed, or that condemnation may not be made under it. The act of 1872 undertakes to extend the power of condemnation beyond that conferred in the act of 1871, in that it gives the additional right to condemn rivers and to divert water from the river in order to obtain a supply of water. But regardless of this difference in the acts, it was competent for the legislature to provide, as has been done in several instances, two systems for the accomplishment of the same purpose. There may be good reasons why the condemnation should be made by commissioners appointed by the city council in the manner prescribed

in the act of 1871 in one case, and that in another a better pur-
pose would be accomplished through an appropriation made
under the direction of the district judge and through the pro-
cedure prescribed by the act of 1872. There is a marked dif-
ference in the two methods of procedure and, there being noth-
ing to indicate that one act is a substitute for the other, both
are to be deemed in force, and a condemnation by either of the
prescribed methods will be sufficient. Two systems for the
appropriation of lands for the use of railroads are in existence.
In the General Statutes of 1868 a definite method was provided
for the condemnation of land for railroads. Under it the
county commissioners of a county, upon an application being
made, were empowered to lay off a route for a railroad and to
assess the damages for the property appropriated for the right
of way, in a prescribed manner. In 1870 an act was passed
authorizing a railroad company, or a landowner, to apply to the
judge of the district court for the appointment of three com-
missioners, who are to make the assessment of damages in the
condemnation of land for right of way, instead of the county
commissioners. It has been recognized that both systems are
in force, and that the legislature did not intend that the provi-
sion for the second should repeal or destroy the first. So here,
the two systems provided for cities of the third class for con-
demning land for waterworks are in existence, and the power
of appropriation may be exercised under either of them.

The judgment is affirmed.