## Richmond

## H. AND H. N. EWING V. BOARD OF SUPERVISORS OF NELSON COUNTY.

### November 17, 1921.

1. STREETS AND HIGHWAYS—*Eminent Domain—Finding as to Damages Sustained on Appeal—Case at Bar.*—In proceedings by a board of supervisors to establish a county road through the lands of appellants, the evidence was conflicting as to what amounts should have been allowed by the lower court for compensation and damages to the landowners. Several board of view had fixed it at various amounts, none of them in excess of $500. The lower court, upon a hearing *de novo*, saw and heard the witnesses, and fixed the amount at the latter sum. Upon a careful consideration of the evidence which was before the trial court, the Supreme Court of Appeals was unable to say that its finding in this respect was without substantial support, and therefore refused to interfere.

2. STREETS AND HIGHWAYS—*Eminent Domain—Viewers Directed to Give an Opinion as to Proper Width of Highway.*—Proceedings by a board of supervisors under the general road law were not erroneous, because the viewers appointed under the provisions of section 1977 of the Code of 1919 were directed to report upon the question as to how wide the road should be, and did so report, where it appeared that the width of the road, as finally fixed, represented the independent judgment and action of the board of supervisors.

3. STREETS AND HIGHWAYS—*Eminent Domain—Proceedings Under General Road Law—Failure to File Map or Plat as Required by Section 4364 of the Code of 1919.*—In proceedings by a board of supervisors to establish a county road under the general road law, as found in sections 1977-1980 of the Code of 1919, the board of supervisors were not bound under the law to file a map or plat showing cuts, fills, trestles, and bridges, etc., as required by section 4364 of the Code of 1919, being a part of the chapter concerning the exercise of the power of eminent domain, where the map or diagram contemplated by section 1978, Code of 1919, of the general road law, was re-

turned with the report of the viewers. And this notwithstanding the provision of section 1980, Code of 1919, that "the commissioners, in the discharge of their duties, shall comply in all respects with the provisions of the chapter concerning the exercise of the power of eminent domain, so far as applicable," and of section 4385 of the Code of 1919, providing that proceedings for the condemnation of a right of way for a public road shall be in accordance with the provisions of the eminent domain chapter.

4. STREETS AND HIGHWAYS—*Eminent Domain—Two Methods of Acquiring Land for Public Highway—General Road Law—General Statute of Eminent Domain.*—There are two methods, then, in Virginia, as the law now is, by which the boards of supervisors may acquire lands for public highways. They may at their election either proceed in the circuit court under the general statute authorizing the exercise of the right of eminent domain, or under the general road law, vesting jurisdiction in the boards of supervisors to exercise that power in proceedings for the establishment of highways, subject to appeal to the circuit court and ultimately to the Supreme Court of Appeals.

5. STREETS AND HIGHWAYS—*Eminent Domain—Compensation—Future Change of Grade.*—Whether where compensation and damage to landowners from the establishment of a public road are fixed upon the present location and grade of the highway in the manner authorized by valid statutory provisions, further claims for damages arising from future changes of grade are cut off is not determined in the instant case.

Error to a judgment of the Circuit Court of Nelson county in proceedings under the general road law to establish a county road. Judgment for the board of supervisors. The landowners assign error.

*Affirmed.*

The opinion states the case.

*J. T. Coleman, Jr.,* for the plaintiffs in error.

*S. B. Whitehead* and *L. Grafton Tucker,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

This is a case in which the board of supervisors of Nelson county have undertaken to establish a county road through the lands of H. and H. N. Ewing in accordance with the provisions of the general road law of the State, as found in sections 1977 to 1980, inclusive, of the Code of 1919.

The proceeding was pending for more than two years prior to the date of the judgment here complained of. During that time a number of orders were entered by the supervisors, and a number of reports were made by various boards of viewers and commissioners. There was some irregularity in these orders and reports, but in the ultimate outcome of the proceedings there was a substantial compliance with all of the requirements of the general road law applicable to the case. From an order of the board of supervisors making a final adoption of the road through the premises and allowing $500 for compensation and damages to the Ewings, the latter appealed to the Circuit Court of Nelson county. That court, having heard the evidence of witnesses and the arguments of counsel, entered the order here complained of, establishing the road and fixing the compensation and damages in like manner as had been done in the final order of the board of supervisors. Thereupon, the Ewings applied for and obtained this writ of error.

The appellants, in their petition for the writ, assign errors as follows: "First, the action of the court in overruling the motion to dismiss; second, in establishing the road at the location in question; third, in not allowing the landowners or petitioners sufficient compensation for the land taken and the damages to the residue; and, fourth, the failure to comply with the provisions of the Virginia statute on the subject of establishing and constructing roads and on the power of eminent domain; the result of which noncompliance is very material to the landowners."

Following these assignments the petition says: "These assignments of error present questions that can and will be discussed together, or as one question. The principal question and the question most material to the petitioners is: Have they received just compensation for the land taken and the damages to the residue?"

[1] The evidence was conflicting as to what amount should have been allowed by the court for compensation and damages to the landowners. Several boards of view had fixed it at various amounts, none of them in excess of $500. The court, upon a hearing *de novo,* saw and heard the witnesses, and fixed the amount at the latter sum. Upon a careful consideration of the evidence which was before the trial court, we are unable to say that its finding in this respect was without substantial support, and upon familiar principles we ought not to interfere unless we should find error in some of the other rulings complained of.

[2] (2) It is insisted that the proceedings by the board of supervisors were erroneous and ought to have been dismissed because the viewers appointed under the provisions of section 1977 of the Code were directed to report upon the question as to how wide the road should be. That section provides that "the right of way for any public road shall be thirty feet wide * * * unless the board of supervisors order a different width." It is manifest from the provisions of the section as a whole that the purpose of the appointment of viewers is to furnish the supervisors with satisfactory information as to the advisability of establishing or altering roads, and there was no impropriety whatever in directing the reviewers to report, as was done in this case, "what, in their opinion, should be the width of the proposed road or any part thereof." The record discloses that at a former stage in the proceedings the circuit court had reached the conclusion that a portion of the road in question ought to be less than thirty feet wide, but was of opinion that

the authority to make this change rested solely with the board of supervisors, and the matter was accordingly referred back "to the board of supervisors of Nelson county, with recommendation that the width of said roadway or right of way be reduced to fifteen feet as to a portion thereof." It was after this action by the court that the last board of viewers was appointed in the case and directed, among other things, to report with reference to the width of the road. A report by the viewers was accordingly made, and thereafter the board itself finally fixed the width of the road, not following, however, the report and recommendation of the viewers in all respects. It thus appears that the width of the road, as finally fixed, represented the independent judgment and action of the board of supervisors, and was in literal compliance with the statute.

[3] (3) The real question in the case, and the one to which the argument of counsel for the landowners was chiefly directed, is whether the board of supervisors was bound under the law to file a map or plat showing cuts, fills, trestles and bridges, etc., as required by section 4364 of the Code, being a part of the chapter concerning the exercise of the power of eminent domain. The map or diagram contemplated by section 1978 of the general road law, under which this proceeding was taken, was returned with the report of the viewers, but it is contended that before they acted upon the question of damage and compensation, they should have been provided with such a map or plat as is required by section 4364.

In presenting this view, it is pointed out that section 1980, a part of the general road law, requires that "the commissioners, in the discharge of their duties, shall comply in all respects with the provisions of the chapter concerning the exercise of the power of eminent domain, so far as applicable;" and that section 4385, a part of the general law with reference to the exercise of the right of eminent do-

main, provides for the condemnation of a right of way for a public road by the board of supervisors of any county, and adds that "the proceedings in all such cases shall be according to the provisions of this chapter, so far as they can be applied to the same;" the contention apparently being that the county could only condemn the right of way after a compliance with the provisions of section 4364, *supra*.

[4] This contention is settled adversely to the plaintiffs in error by the effect of the decision of this court in the case of the *Board of Supervisors* v. *Proffitt*, 129 Va. 9, 105 S. E. 666. In that case, the board of supervisors of Louisa county had undertaken to condemn a right of way for a public highway under the provisions of the eminent domain law, and, while that proceeding was pending, instituted a new proceeding for substantially the same purpose under the general road law, and then dismissed the former proceeding and established the road and the compensation and damages under the latter. The landowners filed an injunction bill in the Circuit Court of Louisa county which resulted in a final decree awarding a perpetual injunction restraining the supervisors from proceeding under the general road law. This case then came to this court on appeal and was reversed, the court holding that any county has the right to acquire lands for public highways under either of the two general statutes above referred to: In that case we said: "There are two methods, then, in Virginia, as the law now is, by which the boards of supervisors may acquire lands for public highways. They may at their election either proceed in the circuit court under the general statute authorizing the exercise of the right of eminent domain, or under the general road law vesting jurisdiction in the boards of supervisors to exercise that power in proceedings for the establishment of highways, subject to appeal to the circuit court and ultimately to this court."

It seems clear that the reference in section 1980 of the general road law to the provisions of the chapter on eminent domain, quoted above, does not contemplate a compliance with section 4364, for the latter section directs *the applicant* to file the petition and accompanying map and profile, while the former (1980) merely directs *the commissioners, in the exercise of their duties* to comply with the eminent domain law so far as applicable which of course relates to their oath, procedure and report.    (Code secs. 4366, 4367, 4368.)

[5] It is contended that if viewers or commissioners are called upon to fix damages without a survey and plat as provided for in section 4364, they will have insufficient information as to the cuts and fills which may be made upon the road as contemplated at the time, and, further, that if the county should, after the first location and establishment of the road, subsequently change the grade, the landowner would, in violation of the present Constitution of the State, be left without remedy for any damages resulting from such subsequent change.

It is evident that the viewers in the instant case had, and that the viewers and commissioners (if there be commissioners) in every case under the general law will have, the benefit of such surveying as may be necessary to determine the location, width and grade of the road, and thus be able to determine approximately the amount of cutting, filling and other construction work to be done, and fix the damages accordingly.

The physical situation in the present case is such as to render it highly improbable that any change of grade upon the road in question will ever be considered desirable.  If such a change should be made, however, and the landowners should claim damages on that account, the question which we left open in *Nelson County* v. *Loving,* 126 Va. 283; 101 S. E. 406, would arise.  It does not arise here be-

cause the compensation and damage has been fixed upon the present location and grade in the manner authorized by valid statutory proceedings. Whether the effect of this is to cut off claims for damages arising from possible future changes we do not now decide.

It may be that the general road law would be improved by a provision more nearly in conformity with section 4364 than anything now found therein, but this is a question for the legislature.

The foregoing discussion has disposed of all the questions which were specifically adverted to or discussed in the assignments of error. It is true that the motion to dismiss, referred to in the first assignment, was accompanied by numerous grounds set out in the record of the proceedings in the circuit court, but none of these grounds was argued or adverted to in the petition for the writ of error except those hereinbefore discussed. With respect to the residue of those grounds, we deem it sufficient to say that they have been duly considered and are overruled.

We find no error in the judgment complained of, and the same is accordingly affirmed.

*Affirmed.*