THE PORT OF NEW YORK AUTHORITY, PLAINTIFF-RESPONDENT, v. MARYVONNE E. HEMING, JR., *ET AL.*, DEFENDANTS, AND ELIZABETH M. CERVIERI AND JOHN A. CERVIERI, DEFENDANTS-APPELLANTS.

Argued November 9, 1960—Decided January 23, 1961.

146

Mr. *Russell E. Watson* argued the cause for plaintiff-respondent, The Port of New York Authority (*Mr. Robert S. Tobin,* of counsel).

Mr. *Nelson G. Gross* argued the cause for defendants-appellants, Elizabeth M. Cervieri and John A. Cervieri (*Messrs. Gross and Gross,* attorneys).

The opinion of the court was delivered by

FRANCIS, J.   These proceedings were instituted by plaintiff, The Port of New York Authority, under *R. S.* 32:1–132 as amended *L.* 1956, *c.* 156, to condemn certain lands of defendants, Elizabeth M. and John A. Cervieri, husband and wife, (as well as lands of other persons) for use in connection with its undertaking to add an additional deck to the interstate George Washington Bridge.   Defendants' demand for a jury trial on the issue of compensation to be awarded for the taking was denied on the ground that under the statute referred to the method of procedure being pursued by the Authority did not provide for trial by jury. After damages had been awarded by the Law Division of

the Superior Court, the Cervieris appealed to the Appellate Division from part of the judgment, contending primarily that the option granted by the Legislature to the Authority of selecting one of two alternative procedures in condemning their property deprived them of equal protection of the law in violation of the state and federal Constitutions. Before argument there the matter was certified on our own motion for disposition by this court.

The action to condemn defendants' property for the purpose indicated was instituted on July 28, 1958. The complaint recited that the Authority elected "pursuant to the option accorded to it" by N. J. S. A. 32:1–132 to proceed under the air terminal act, R. S. 32:1–35.15 and not under the general eminent domain act, N. J. S. A. 20:1–1 to 36. Immediate fee simple title and possession were demanded. An order to show cause why the relief prayed for should not be granted, returnable September 5, 1958, was issued by the Superior Court, Law Division, and served upon the various parties involved. On the return day, the Cervieris appeared without counsel and an order was entered awarding title of the several properties described in the complaint to the plaintiff, making provision for possession thereof and directing plaintiff to bring on "a hearing to have this Court either (a) determine *without a jury* after view of said property the compensation which should justly be made to the owner or respective owners thereof and thereafter enter a judgment in the amount so determined, or (b) in the alternative to have this Court appoint three advisory commissioners to view said real property and to advise on or before a date to be specified by the Court of the damages, if any, which should be assessed for the taking of said real property." (Emphasis added)

Some time prior to the hearing to fix the damages these defendants served and filed a notice that they would apply at the hearing for a trial by jury. The motion was made and denied because the Authority had elected to condemn in accordance with the procedure prescribed by the airport

terminal law which gave neither party to the action a right to trial by jury. The matter was then heard, damages were awarded, and this appeal followed.

█ The Authority has moved to dismiss the appeal, contending that the demand for jury trial and the attack upon the constitutionality of the election bestowed upon it with respect thereto should have been made immediately after the service of the complaint and order to show cause upon the defendants. The claim is that since title and possession had vested in it within six weeks after defendants were served, their jury demand about a year and a half later came too late. But defendants disclaim any effort or intention to interfere with the transfer of title or possession. The request for a jury was pertinent only to the issue of damages and was made only as to that aspect of the case. Furthermore, reversal of the judgment would not divest the title. *N. J. S. A.* 32 :1–35.15(*l*). Under the circumstances lapse of time does not foreclose consideration of the problem. Accordingly, the motion to dismiss is denied.

Study of the merits of the appeal requires reference to various clauses of the Constitutions and to a number of informative statutes.

█ Acquisition of property for public use by the state, county, municipality, or a public agency is generally controlled by the eminent domain act, *R. S.* 20 :1–1 to 36. But for a few changes that act traces back substantially in its present form to *L.* 1900, *c.* 53. When property is desired for public use and the parties cannot agree upon the price, the value is required to be ascertained in the manner directed thereby "except as otherwise provided by law." *R. S.* 20 :1–1. Provision is made for the appointment by the Superior Court of three commissioners to fix the compensation to be paid. When they have done so in the manner prescribed and filed their report with the court, either the public body or the land owner may appeal therefrom. *N. J. S. A.* 20 :1–2 to 16. Such appeal must be tried in the Superior Court "by a jury upon the demand of any party" thereto. *N. J. S. A.*

20:1–20. After the advent of the 1947 *Constitution* this court in 1953 implemented the general act through its Rules of Civil Practice. *R. R.* 4:92–1 to 13. Provision was made for jury trial on appeal from the award of commissioners on demand of any party. *R. R.* 4:92–6.

The Port of New York Authority is a public corporate entity, an arm of the States of New York and New Jersey, created in 1921 by compact between them for the purpose of coordination and development of the terminal, transportation and other facilities of commerce in, about and through the port of New York. *R. S.* 32:1–1. It was given the power of condemnation by *R. S.* 32:1–33, and by *R. S.* 20:1–1 to 33 a legislative mandate was imposed to exercise the power according to the procedure prescribed by the eminent domain act, *supra*. Moreover, by specific reference the same procedure was made applicable to property to be condemned for the Bayonne Bridge, the Outerbridge Crossing, and construction of the Goethals Bridge. *L.* 1925, *c.* 97, *R. S.* 32:1–100; *L.* 1925, *c.* 193, *R. S.* 32:1–47; *L.* 1925, *c.* 195, *R. S.* 32:1–59. In addition, and more pertinent to the present case, construction of the George Washington Bridge was authorized by *L.* 1925, *c.* 41, *R. S.* 32:1–71. Section 7 of the act also required any condemnation proceedings necessary to the accomplishment of that end to be brought under the eminent domain act. *R. S.* 32:1–77.

*L.* 1931, *c.* 4 among other things legislated with regard to the acquisition by condemnation of any real property that might be necessary for the construction of bridges or tunnels or for the making of additions or improvements to bridges or tunnels already in existence. *Section* 15; *N. J. S. A.* 32:1–132. Authorization was given to secure such property by use of the eminent domain act.

In 1947 the Authority was empowered to acquire property by condemnation for air terminal purposes. *L.* 1947, *c.* 43, *N. J. S. A.* 32:1–35.15. The act provides its own procedure to be employed in so doing. Upon the filing in the Superior Court of a complaint seeking condemnation and after com-

pliance with certain formalities as to notice, and the like, an application must be made to the appropriate judge to fix a date for hearing on the compensation to be paid. The matter is then heard by a judge who shall determine "without a jury and with or without a view of the real property" the issue of valuation. *N. J. S. A.* 32:1–35.15(*i*). He may appoint three commissioners to view the lands and "advise" him what damages, if any, shall be awarded. If appointed:

"The commissioners shall proceed under such directions and rules as shall from time to time be fixed by the said judge to view the lands, to hear such evidence as they may desire, and to fix such sum, if any, that in their judgment will represent the fair value of the lands so taken. * * *." *N. J. S. A.* 32:1–35.17*a*.

The judge is not bound by the commissioners' findings. He may review them and alter or reject them in such manner as will fairly protect the interests of the parties, and his "review may be made either with or without further hearing." *Ibid.* After the judge has ascertained the compensation to be paid, judgment in that amount is to be entered. Any party aggrieved by the judgment "may appeal." *Sections 15f–l,* as amended *L.* 1953, *c.* 31, *N. J. S. A.* 32:1–35.15*f–l.* Such an appeal would be heard in the Appellate Division.

*Section* 15 of the 1931 act, *N. J. S. A.* 32:1–132, relating, as has been indicated above, to the construction of and to the making of additions or improvements to existing bridges and tunnels, and the acquisition of any necessary land therefor by means of the procedure established by the eminent domain act, was amended by *L.* 1956, *c.* 156. The amendment is the cause of the present controversy. It did not repeal the direction to proceed in condemnation under the eminent domain act but it granted to the Authority the "option" to pursue that statute or the procedure created by the air terminal act, *supra.* More specifically, the amendment authorized the Authority to condemn pursuant to "Revised Statutes of New Jersey, Title 20:1–1 *et seq.* in the case of property located in * * * [New Jersey], or at the option of the Port Authority as provided in section 15

of chapter 43 of the laws of New Jersey, 1947, as amended for the condemnation of real property for air terminal purposes * * *." *N. J. S. A.* 32:1–132.

As the result of the 1956 amendment, therefore, the Legislature, presumably having in mind the provision of *Section* 1 of the eminent domain act, *R. S.* 20:1–1, that it shall control the exercise of the power of eminent domain "except as otherwise provided by law," made available two procedural mechanisms for condemnation cases. Thus, if the Authority decided to proceed under the eminent domain act commissioners would be appointed to value the property. If the parties were satisfied with the award, that would end the matter. If, however, either was dissatisfied, an appeal to the Law Division of the Superior Court could be taken and a trial *de novo* had with or without a jury, at the option of either party. Or if the Authority elected to proceed under the airport terminal act, the matter could be heard expeditiously by the Law Division (with or without preliminary appointment of advisory commissioners) and any damages arising from the taking ascertained. When the latter course is followed, neither party can demand trial by jury. In the present instance, the Authority having chosen to take defendants' land under the air terminal act, trial by jury of the issue of damages was not open to either litigant.

The first question to engage our attention arises from defendants' contention that the option clause of the 1956 amendment of *Section* 15 transgresses *Article* IV, *Section 7, paragraph 5*, of the New Jersey *Constitution* because it incorporates therein by reference only the condemnation procedure formula of the air terminal act. The claim is that since the Constitution provides that "No act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of the act or which shall enact that any existing law, or any part thereof, shall be applicable, except by inserting it in such act," the failure to set out the pertinent sections of the air terminal act at length in the amendment invalidates it.

The law has long been settled to the contrary with respect to enactments like this one. A statute which incorporates a prior act by reference in order to create some substantive right or duty offends against the Article. But one which adopts by reference only the method of procedure necessary to effectuate its purposes is not prohibited. *Anthony v. Rea,* 22 *N. J. Super.* 452, 456 (*App. Div.* 1952); *Jersey City v. Martin,* 127 *N. J. L.* 18, 23 (*E. & A.* 1940); *Hutches v. Borough of Hohokus,* 82 *N. J. L.* 140, 142 (*Sup. Ct.* 1911); *Campbell v. Board of Pharmacy of New Jersey,* 45 *N. J. L.* 241, 244–245 (*Sup. Ct.* 1883), affirmed 47 *N. J. L.* 347 (*E. & A.* 1885); 6 *Nichols, Eminent Domain,* § 24.2[1], *p.* 21 (*3d ed.* 1953); 1 *Sutherland, Statutory Construction,* § 1925 (*3d ed.* 1943).

 The crucial issue is projected by defendants' assertion that the option clause of the 1956 amendment deprives them of equal protection of the law in violation of the 14th *Amendment* of the *United States Constitution* and *Article* I, *paragraph* 1, of the *New Jersey Constitution.* More particularly, they point out that under the eminent domain act if either they or the Authority are dissatisfied with an award of commissioners, the party dissatisfied is entitled, upon making of such an election, to appeal to the Law Division and to have the damages "determined by a jury." But since the 1956 amendment confers on the Authority the right to proceed under either the eminent domain act or the airport terminal act, and thus to eliminate the possibility of appeal to the Law Division and trial by jury for itself and the property owner, they insist that they are subjected to unfair discrimination. They do not say that the procedure itself for the ascertainment of just compensation for the land taken as prescribed by either act standing alone denies due process, *i. e.,* notice and fair hearing. And they recognize that there is no constitutional right to trial by jury in condemnation cases. 1 *Nichols, op. cit. supra,* § 4.105[1]; 1 *Orgel, Valuation Under Eminent Domain,* 54 (*2d ed.* 1953); 18 *Am. Jur., Eminent Domain,* § 337, *p.* 979.

The right of eminent domain is an offspring of political necessity and is an integral facet of sovereignty. *Bauman v. Ross,* 167 *U. S.* 548, 17 *S. Ct.* 966, 42 *L. Ed.* 270 (1897); *Ryan v. Housing Authority of City of Newark,* 125 *N. J. L.* 336 *(Sup. Ct.* 1940). Since the power of the State or of an agency created to perform some of its governmental functions to take property for public use is such a basic one, every man must be considered as holding his land subject to its exercise. *Todd v. Auslin,* 34 *Conn.* 78 *(Sup. Ct. Err.* 1867). No one can complain of injustice arising out of use of it against him so long as it is lawfully employed within existing constitutional limitations. *Jahr, Eminent Domain* 3 (1951); 1 *Nichols, op. cit. supra,* § 1.14[2]. An important qualification appearing in the *New Jersey Constitution, Article* 1, *paragraph* 20, and *Article* 4, *Section* 6, *paragraph* 3, as well as in the organic charter of most states, is that no private property may be taken for public use without just compensation.

In the absence of any constitutional mandate to the contrary, establishment and regulation of the manner and method of exercising the power of eminent domain has long been recognized as a prerogative of the Legislature, subject only to the due process clauses of the federal and local constitutions. *Crane v. Hahlo,* 258 *U. S.* 142, 42 *S. Ct.* 214, 66 *L. Ed.* 514 (1922); *A. Backus, Jr. & Sons v. Fort Street Union Depot Co.,* 169 *U. S.* 557, 18 *S. Ct.* 445, 42 *L. Ed.* 853 (1898); *United States v. Jones,* 109 *U. S.* 513, 3 *S. Ct.* 346, 27 *L. Ed.* 1015 (1883); *Morris May Realty Corp. v. Board, etc., County of Monmouth,* 18 *N. J.* 269, 275 (1955); *Marin Municipal Water Dist. v. Marin Water & Power Co.,* 178 *Cal.* 308, 173 *P.* 469 *(Sup. Ct.* 1918); *Jahr, op. cit. supra,* § 185; 18 *Am. Jur., Eminent Domain,* § 308. The legislative discretion as to the procedure to be followed within that framework is very broad. *Secombe v. Milwaukee & St. Paul Ry.,* 23 *Wall.* 108, 90 *U. S.* 108, 23 *L. Ed.* 67 (1874). No particular form or mode of action is required. All that is essential is that in some appropriate way, before

some properly constituted tribunal, inquiry shall be made, on notice, as to the amount of compensation to be paid for the property taken, and when that has been provided the command of due process has been met. *A. Backus, Jr. & Sons v. Fort Street Union Depot Co., supra,* 169 *U. S.,* at *p.* 569, 18 *S. Ct.,* at *p.* 450; *State by State Highway Commissioner v. Fisher,* 54 *N. J. Super.* 274, 281 (*App. Div.* 1959); *Ryan v. Housing Authority of City of Newark, supra,* 125 *N. J. L.,* at *pp.* 341–342; *Jahr, op. cit. supra,* § 185. And where that appears the courts properly defer to the legislative will. *Morris May Realty Corp. v. Board, etc., County of Monmouth, supra.* There is practically universal agreement that trial by jury is not necessary. 1 *Nichols, op. cit. supra,* § 4.105; 1 *Orgel, op. cit. supra,* 54; 18 *Am. Jur., Eminent Domain,* § 337, *p.* 979. The proceeding for ascertainment of compensation as a condition to the taking may be prosecuted before commissioners, or special boards, or the courts, with or without the intervention of a jury, as the Legislature may designate. Due process is satisfied if it is conducted in some fair and just manner, with opportunity to the owner of the property to present evidence and to be heard thereon. *Dohany v. Rogers,* 281 *U. S.* 362, 50 *S. Ct.* 299, 74 *L. Ed.* 904 (1930); *Crane v. Hahlo, supra,* 258 *U. S.,* at *p.* 147, 42 *S. Ct.,* at *p.* 215; *United States v. Jones, supra,* 109 *U. S.,* at *p.* 519, 3 *S. Ct.,* at *p.* 350; *Suncrest Lumber Co. v. North Carolina Park Commission,* 30 *F. 2d* 121 (*D. C. W. D. N. C., Three Judge Ct.* 1929), appeal dismissed 280 *U. S.* 615, 50 *S. Ct.* 13, 74 *L. Ed.* 656 (1929); *Morris v. Comptroller,* 54 *N. J. L.* 268, 272 (*Sup. Ct.* 1892). Moreover, there is no vested right in any statutory *modus operandi.* The United States Supreme Court has said that "each succeeding legislature may establish a different one, providing only that in each is preserved the essential elements of protection." *A. Backus, Jr. & Sons v. Fort Street Union Depot Co., supra,* 169 *U. S.,* at *p.* 570, 18 *S. Ct.,* at *p.* 450.

These general observations bring us within range of the specific problem presented. May the Legislature establish alternative procedures for condemnation either of which may be resorted to at the election of the State or one of its public entities? We have no doubt that it may be done constitutionally provided each procedure in and of itself satisfies the demands of due process and equal protection.

Methods of determining the damages to be paid are numerous throughout the country. General, special and alternate procedures abound in the various states. *Jahr, op. cit., supra,* § 186; 6 *Nichols, op. cit., supra,* § 24.1; 29 *C. J. S. Eminent Domain* § 214*d.* As Orgel said: "The mode of procedure in condemnation cases in the United States is wholly a creature of statute and the legislatures have not been sparing of their progeny." 1 *Orgel, op. cit., supra,* § 8. On the national scene, until the adoption of Rule 71A of the Rules of Civil Procedure in 1951, the federal courts were required to conform to state practice in eminent domain actions. 7 *Moore's Federal Practice,* § 71a.03 (2d ed. 1955). Divergent practices among the states and within the same state led the Federal Advisory Committee on rules to the belief that uniform procedure in the federal system was desirable. In the general statement accompanying the 1948 draft of Rule 71A it was suggested that as far back as 1931 in the various states there were 269 different methods of judicial procedure in various classes of condemnation cases and 56 methods of nonjudicial or administrative procedure. 7 *Moore, op. cit., supra,* at p. 2730. In *Union School District of City of Jackson v. Starr Commonwealth for Boys,* 322 *Mich.* 165, 33 *N. W. 2d* 807, 809 (*Sup. Ct.* 1948), the Supreme Court of Michigan, speaking on the subject of multiple and optional procedures, said:

"In the report of the Judicial Council of Michigan, January 1931, a careful study was made of seventeen different methods provided for by which various State agencies could exercise the right of eminent domain. Some of the methods apply only to certain agencies, while others apply to many agencies. Criticism has frequently been

leveled at this system because of the confusion which it causes, but the recommendation of the Judicial Council of a single method was never submitted as a Constitutional amendment. Alternative methods are still left [open] to certain public agencies. That pursued by plaintiff is proper and is not in any way affected by the fact that plaintiff might have pursued a different method."

Out of the Federal Committee study came Rule 71A. Although substantial uniformity for condemnation actions was achieved thereby, certain qualifications were added. In short, under Rule 71A(*h*) if Congress has created or creates any special tribunal to hear certain cases arising out of the exercise of the federal power of eminent domain, that procedure must be followed. Otherwise any party may have a jury trial on demand, unless the trial court in its discretion orders that "because of the character, location, or quantity of the property to be condemned, or for other reasons in the interest of justice, the issue of compensation shall be determined by a commission of three persons appointed by it." *Federal Rules of Civil Procedure, rule 71A*. Nichols notes that Congress has specially constituted a tribunal for trial of such cases in instances of expropriation by the Tennessee Valley Authority Act and in the District of Columbia. *6 Nichols, op. cit., supra, p. 334.*

The Tennessee Valley Authority Act does not grant trial by jury. 16 *U. S. C. A.* § 831*x*. The procedure established, *i. e.*, original determination of compensation by commissioners, and review in the District Court without a jury, is constitutional. *Welch v. Tennessee Valley Authority*, 108 *F. 2d* 95 (6 *Cir.* 1939), *certiorari* denied *Welch v. United States ex rel. and for use of Tennessee Valley Authority*, 309 *U. S.* 688, 60 *S. Ct.* 889, 84 *L. Ed.* 1030 (1940). The *modus operandi* was said to be appropriate to the nature of the case and in "no way contrary to the Fifth Amendment." The Circuit Court of Appeals declared that: "[T]he State may also, when providing for its own needs under the right of eminent domain and taking for such purpose the property of individuals, give all necessary protection to its agents

and relegate the owner to such remedy as it deems proper, provided it is adequate and accords to the citizen due process, and without any reference to the Seventh Amendment." 108 *F. 2d* 99; and see *United States ex rel. Tennessee Valley Authority v. Puryear,* 105 *F. Supp.* 534 (*D. C. W. D. Ky.* 1952).

When alternative methods of condemnation are prescribed by the Legislature, in one of which either party at some stage of the action may obtain a jury trial, and in the other neither has such trial, and the "option" to select the course to be followed is expressly given to the public agency, the instinctive first reaction is that the unilateral choice is unfair. But we must be mindful that the State or an arm thereof has the authority to condemn property for public use. It alone institutes the proceedings (except perhaps in those rare instances when the citizen employs *mandamus* to compel their institution, if that can be said to constitute institution of the action). If alternative procedures existed the agency would make the choice as to which to pursue, even if the words "at the option of" were not present.

Thus, since there is no constitutional right to trial by jury, the test of validity is not whether alternative procedures are established to be used at the election of the public entity but (1) whether the objective of each one is to achieve just compensation for the taking and whether each one, in and of itself, satisfies the demands of due process, *i. e.,* notice and fair hearing before an impartial tribunal competent to reach a just result, and (2) whether the public agency may be classified so as to warrant the separate legislative treatment.

It is obvious in this instance that the proceeding prescribed for arriving at just compensation under the eminent domain act or under the airport terminal act is sufficient unto itself as a due process mechanism. Each one is designed to produce and is capable of producing a just result. No one suggests to the contrary. If there were inequality within the framework of either procedure, for example, if

the Authority were given and the property owner were denied a right of appeal, *In re City of Rochester,* 224 *N. Y.* 386, 121 *N. E.* 102 (*Ct. App.* 1918); *State ex rel. Owen v. Wisconsin-Minnesota Light and Power Co.,* 165 *Wis.* 430, 162 *N. W.* 433 (*Sup. Ct.* 1917), or the right to introduce evidence of comparable sales, or offers to sell or purchase, *Georgia Power Co. v. Brooks,* 207 *Ga.* 406, 62 *S. E.* 2d 183 (*Sup. Ct.* 1950), in one mode of procedure which the condemnor had the option to select and did select in the particular case, a deprivation of equal protection of law would exist. But so long as each party to the litigation is accorded evenhanded treatment legislatively within each procedural technique, the fact that the Authority (assuming a valid basis for separate treatment) has the choice of one of two equally constitutional alternatives does not make the grant of the choice unconstitutional. Property owners are not deprived thereby of substantial equality in the adjudication of their rights; no matter of essential justice or fundamental right is affected. See *Marin Municipal Water Dist. v. Marin Water & Power Co., supra,* 173 *P.,* at *p.* 472; *Manchester Housing Authority v. Fisk,* 102 *N. H.* 280, 155 *A.* 2d 186, 189 (*Sup. Ct.* 1959). In this connection a comment of the. Chancellor in *Scudder v. Trenton Delaware Falls Co.,* 1 *N. J. Eq.* 694, 721–722 (*Ch.* 1832), in denying that trial by jury was required in eminent domain actions, is worthy of mention:

"There is no reason why three indifferent men, selected by the chief justice from the body of the state, for their probity and independence, should not, in a mere matter of valuation, exercise as just a judgment, and be in all things as discreet and impartial, as a jury of the vicinage."

In the ultimate the conclusion to be drawn from the cases and texts is that establishment of various as well as alternate methods of procedure for the valuation of property being expropriated is a matter of legislative discretion. Where election of one of two modes is given to a public condemnor (which may be classified specially) the choice is valid so

long as the remedies provided are equal from a due process standpoint. The wisdom of the legislative act is not a matter for the judicial branch of the government. *Cf. United States v. Alexander,* 47 *F. Supp.* 900, 912 (*D. C. W. D. Va.* 1942).

As has already been indicated, many cases are to be found wherein the right of a public agency to elect to proceed under one or the other of two legislatively created procedures has been recognized as valid. The fact that material differences existed in the two forms of procedure did not alter the result. Constitutional requirements were deemed satisfied so long as each method fairly provided for the achievement of just compensation. *United States v. 243.22 Acres of Land,* 129 *F.* 2d 678 (2 *Cir.* 1942), *certiorari* denied *Lambert v. United States,* 317 *U. S.* 698, 63 *S. Ct.* 441, 87 *L. Ed.* 558 (1943); *United States v. Alexander, supra; United States v. Certain Lands,* 43 *F. Supp.* 578 (*D. C. E. D. N. Y.* 1942); *Lybrand v. Forman,* 259 *Ala.* 354, 67 *So.* 2d 4 (*Sup. Ct.* 1953); *City of Oakland v. Parker,* 70 *Cal. App.* 295, 233 *P.* 68 (*D. C. App.* 1924); *Evel v. City of Utica,* 103 *Kan.* 567, 175 *P.* 635 (*Sup. Ct.* 1918); *In re Opening of Gallagher Ave. in City of Hamtramck,* 300 *Mich.* 309, 1 *N. W.* 2d 553 (*Sup. Ct.* 1942); *Muskingum Watershed Conservancy Dist. v. Funk,* 132 *Ohio St.* 593, 9 *N. E.* 2d 512 (*Sup. Ct.* 1937); *Town of Cookeville v. Farley,* 171 *Tenn.* 260, 102 *S. W.* 2d 56 (*Sup. Ct.* 1937); *City of Chattanooga v. State,* 151 *Tenn.* 691, 272 *S. W.* 432 (*Sup. Ct.* 1925); *Doughty v. DeFee,* 152 *S. W.* 2d 404 (*Tex. Ct. Civ. App.* 1941); *Ewing v. Board of Sup'rs of Nelson County,* 131 *Va.* 471, 109 *S. E.* 474 (*Sup. Ct. App.* 1921); *Board of Sup'rs of Louisa County v. Proffit,* 129 *Va.* 9, 105 *S. E.* 666 (*Sup. Ct. App.* 1921); *State ex rel. Allis v. Circuit Court,* 189 *Wis.* 265, 207 *N. W.* 252 (*Sup. Ct.* 1926). In the two New York cases, *United States v. Certain Lands, supra,* and *United States v. 243.22 Acres of Land, supra,* the Federal District Courts were concerned with *Article* I, § 7, of the New York Constitution which

provides that compensation for private property taken for public use "shall be ascertained by a jury, or by the supreme court without a jury, but not by a referee other than an official referee, or not by less than three commissioners, appointed by a court of record as may be prescribed by law." Both courts recognized the right of the state to select any one of the methods outlined so long as it provided a fair and reasonable avenue to just compensation. There was no suggestion that selection by the state of commissioners rather than jurors to ascertain damages denied the 14th Amendment's guaranty of equal protection to the property owner.

*Pacific Telephone & Telegraph Co. v. Eshleman,* 166 *Cal.* 640, 137 *P.* 1119, 50 *L. R. A., N. S.,* 652 (*Sup. Ct.* 1913), dealt with a somewhat analogous situation. The Constitution of California provided for trial by jury in eminent domain cases. It also created the Railroad Commission, gave it jurisdiction over utilities as well as the authority to hear, determine and fix compensation without jury intervention in condemnation cases involving utilities. In the cited case it was argued that such practice was violative of the 14th Amendment of the *Federal Constitution* since it deprived utilities of the trial by jury that was given to all other persons whose property was taken for public use. The contention was overruled, the Supreme Court saying:

"The requirement of a jury and of a prepayment of damages is not a part of the federal Constitution, nor of that of many of our states. It is in those jurisdictions quite a common practice to create boards and commissions to exercise the power on behalf of the state, and to make awards between litigants. It is certainly true that in the vast modern development of public utilities in their multifarious activities, in their complicated inter-relations, where a taking of property is involved, a great saving of time, and a more just award may be expected from a learned, skilled, and dispassionate tribunal such as the Railroad Commission than can ever be hoped for from the haphazard verdicts of juries. And very good reasons therefore appear why, for the benefit of the state as well as for the benefit of the public service companies, awards as to the latter should be made by this body, and not by a jury. It is therefore concluded that no violence is done to the rights of petitioner under the Constitution of the United States by this proviso of the state

Constitution authorizing the Railroad Commission to exercise the power of eminent domain and assess damages for a taking of property." 137 *P.*, at *p.* 1137.

See also, *Kennebec Water Dist. v. City of Waterville*, 96 *Me.* 234, 52 *A.* 774 (*Sup. Jud. Ct.* 1902).

▮ The remaining question is whether the Port Authority may be specially classified for purposes of eminent domain proceedings. We have no doubt that it may be so treated. Nichols properly observes that the rule of equal protection applies fully in the framework of a specific mechanism for ascertaining value within a particular class of condemnors. But the operation of that guaranty does not demand that the procedure to condemn by the variant classes of condemnors be the same. The action may be classified and adapted to the peculiar conditions and problems inherent in the character of the condemnation. 1 *Nichols, op. cit., supra* § 4.15[2]. The principle of common application is that if there be any reasonably conceivable basis for the separate treatment the legislation will not be voided. *Robson v. Rodriquez*, 26 *N. J.* 517, 524 (1958). So far as eminent domain proceedings are concerned, the equal protection clause does not contain a mandate for exact uniformity of procedure. The Legislature may classify litigation and adopt one type of procedure for one class and a different type for another. *Dohany v. Rogers, supra*. In the *Dohany* case the United States Supreme Court accepted the fact that eminent domain proceedings were being conducted by the State Highway Commissioner on behalf of the state as in itself a valid basis for the exercise of legislative judgment to provide a different procedure from that prescribed for the exercise of condemnation by a private corporation. 281 *U. S.*, at *p.* 369, 50 *S. Ct.*, at *p.* 302. Certainly separate classification in the case of such an important arm of the sovereign States of New Jersey and New York as the Authority should not present a more formidable constitutional obstacle. (Here it may be noted that the New York legislation contains no grant of jury trial in Authority condemnation cases in that

state. And in the air terminal act the Authority is given the option of utilizing the special procedure set forth therein or that prescribed by the general condemnation law. *N. Y. L.* 1947, *c.* 802, § 15; 12 *Consolidated Laws Service, c.* 167, § 15; *L.* 1920, *c.* 923 as amended; 2 *Consolidated Laws Service, Condemnation Law,* § 1, *et seq.*)

There are other realistically conceivable reasons for special treatment for the Authority in this field. In the laying out and construction of bridges and tunnels and their extensive approaches in the Hudson River waterfront area, many large and small lots and tracts of land of various kinds, vacant, residential, business and industrial, would be required. Complex problems of administration and valuation would be met. Moreover, the choice of locale for construction is limited to the Port vicinity at points on opposite sides of the River, making coordination necessary in the expropriation proceedings. The principle that a straight line is the shortest distance between two points presumably cannot be ignored. Accordingly, we believe sufficient factors are present to support the legislative judgment that the Authority should be classified separately for eminent domain procedure purposes. More particularly, in the light of the whole problem, establishment of the alternative modes of proceeding and in giving the Authority the option of selecting the one to be followed cannot be regarded as being without any reasonable justification. Manifestly, where many types and sizes of properties are being taken and the problems arising therefrom are complex, greater expedition and quicker understanding may be expected from an experienced judge than from a jury of laymen. In the present undertaking of the Authority, which concerns only the construction of an additional deck on the George Washington Bridge so that a substantial part of the existing approaches may be utilized, 40 tracts were the subject of this one action. And undoubtedly those parcels represent only a part of the total acquisition necessary. In such a context the language of the Federal District Court in *Via v. State Commission on Conservation, etc.,* 9 *F. Supp.*

556, 563 (*D. C. W. D. Va.* 1935), affirmed 296 *U. S.* 549, 56 *S. Ct.* 245, 80 *L. Ed.* 388 (1935), is pertinent:

"If, because of the large number of tracts of land involved or for other reasons, the general statute was believed to be impracticable or awkward of operation, the Legislature had an undoubted right to provide for condemnation by a procedure more *conveniently fitted to the nature of the proceedings;* provided, of course, that the new statute in itself was not invalid. And the mere fact that its provisions varied from those of the general statute did not render it invalid."

That statement represents generally the basis for the special non-jury proceedings incorporated in the Tennessee Valley Authority Act. In fact, it seems to provide in large measure the reasons which impel the various Federal District Courts to eliminate jury trials on application under Rule 71A. See *United States v. Delaware, Lackawanna & W. R. R.,* 264 *F. 2d* 112 (3 *Cir.* 1959), *certiorari* denied 361 *U. S.* 819, 80 *S. Ct.* 63, 4 *L. Ed. 2d* 65 (1959); *United States v. Buhler,* 254 *F. 2d* 876 (5 *Cir.* 1958); *United States v. 2792.82 Acres of Land,* 114 *F. Supp.* 76 (*D. C. E. D. S. C.* 1953). And in our judgment the same factors may well have influenced our Legislature in enacting the amendment with which we are concerned here. Whether the course adopted in the federal domain, which lodges in the judiciary the authority to decide if jury trial should be had, is better or wiser is not a matter for judicial determination under the circumstances of this case. The wisdom of granting to the Authority the choice of the particular procedures involved here must be argued before the legislative tribunal.

Naturally, it is implicit in the grant that the option will be used reasonably by the Authority. In connection with the accomplishment of a project such as the one under discussion, an election to acquire *one* tract by the general eminent domain proceeding, with its trial by jury on appeal from the award of commissioners, and *the next one* by the air terminal act procedure, could find no justification in the 1956 amendment to *R. S.* 32:1–132. In such situations,

except for some unique circumstance associated with a particular transaction, an election of procedure once made must control condemnation proceedings for the entire project.

In conclusion, it may be said that the clauses of the federal and state Constitutions on which defendants rely do not prohibit a state from establishing different rules of procedure in eminent domain cases for different classes of cases or of litigants, provided the variations relate merely to matters of procedure, and do not operate to deprive any property owner of substantial equality in the adjudication of his rights. So long as the Legislature provides a fair and equitable inquiry, in which the parties interested are allowed to be heard and present evidence, and are protected in their right to have just compensation, they are not deprived of the equal protection of the law because other classes of cases have been provided with a different method or a different tribunal for accomplishing the same result. See *Marin Municipal Water Dist. v. Marin Water & Power Co., supra; Pacific Telephone & Telegraph Co. v. Eshleman, supra; Kennebec Water Dist. v. City of Waterville, supra; Manchester Housing Authority v. Fisk, supra.*

Accordingly, the judgment is affirmed.

PROCTOR, J. (dissenting). With today's decision, The Port of New York Authority becomes the only litigant in the State of New Jersey with the exclusive right in condemnation proceedings to determine whether trial shall be by jury. I must dissent, because I think that *N. J. S. A.* 32:1–132, insofar as it confers that exclusive right on the Authority violates the Fourteenth Amendment to the *Federal Constitution.* For the purpose of analyzing the issue raised by this appeal it is essential to distinguish between the rights inherent in the concept of due process and the concept of equal protection of the law. The majority devotes considerable effort to demonstrate that due process is satisfied if the property owner is afforded reasonable notice and the opportunity to have his case heard by an impartial tribunal.

It also emphasizes that, in the context of determining just compensation for condemned property, due process does not require a jury trial. I agree with both propositions. But the appellants in this case have never argued that *N. J. S. A.* 32:1–132 deprives them of due process. Their assertion is that they have been denied equal protection of the law in that the Authority is given the right to elect trial by jury while they are not. Equal protection is a distinct constitutional guarantee which in effect provides that lawmakers must afford to all persons within a class equality of treatment, even though such persons also enjoy the protections of due process. *Truax v. Corrigan,* 257 *U. S.* 312, 42 *S. Ct.* 124, 66 *L. Ed.* 254 (1921). It also requires that any legislative classification of persons be reasonably related to a recognized objective of government. *Washington National Ins. Co. v. Board of Review,* 1 *N. J.* 545 (1949).

Is a property owner afforded equality of treatment, within the meaning of the above-outlined principles, when the Authority as opposing party litigant *alone* has the right to decide whether trial shall be by jury? Otherwise stated, is there something so peculiar about the status of the Authority as a litigant that it may justifiably be put in a class apart from condemnee-litigants and be afforded the important advantage of selecting what tribunal shall decide the amount of just compensation? I don't think so. The majority, in an exhaustive opinion, has not cited a single case where a public agency is given a similar option and I know of none. Furthermore, I do not believe that the cases which are cited are apposite to the issue before us for decision.

The majority relies in part, for example, on cases which sustain condemnation procedures prescribed by the Tennessee Valley Authority Act. *Welch v. Tennessee Valley Authority,* 108 *F. 2d* 95 (6 *Cir.* 1939), *certiorari* denied *Welch v. United States ex rel. and for use of Tennessee Valley Authority,* 309 *U. S.* 688, 60 *S. Ct.* 889, 84 *L. Ed.* 1030 (1940); *United States ex rel. Tennessee Valley Authority v. Puryear,*

105 *F. Supp.* 534 (*D. C. W. D. Ky.* 1952). But these merely hold that different classes of condemnors need not follow the same condemnation procedures. Whereas condemnors are ordinarily entitled under Rule 71A of the Federal Rules of Civil Procedure to a jury determination of compensation, the T. V. A. must have that issue determined without a jury. I have no doubt that the T. V. A. as a condemnor is in a class which may be reasonably differentiated from other condemnors, but the fact here pertinent is that when the T. V. A. condemns property *neither* it *nor* the condemnee-litigant may choose to have a trial by jury. Under the statute both are afforded equality of treatment since neither can avoid the requirement of having compensation determined without a jury. *Pacific Telephone & Telegraph Co. v. Eshleman,* 166 *Cal.* 640, 137 *P.* 1119, 50 *L. R. A., N. S.,* 652 (*Sup. Ct.* 1913), also relied on by the majority, is simply the reverse side of the coin. There it was held that the equal protection clause does not require the same condemnation procedures to be applied to different classes of condemnees. The Constitution of California which provided for trial by jury in general eminent domain proceedings also provided that when utility land was taken compensation would be fixed by the Railroad Commission without a jury. I have no doubt that utilities may reasonably be differentiated as a class from other condemnees for purposes of deciding which are entitled to a jury trial on compensation, but again the fact here pertinent is that when utility land is condemned *neither* the condemnor *nor* condemnee-utility may choose to have compensation determined by a jury. Both are confined to a determination by the Railroad Commission alone.

Furthermore, I do not see how any of the cases cited by the majority for the proposition that a public agency may elect to proceed under one or another of several legislatively created procedures is authority for the issue before us. Only the New Hampshire and the two New York cases concerned alternative condemnation procedures for determining com-

pensation, at least one of which included trial by jury. *Manchester Housing Authority v. Fisk*, 102 *N. H.* 280, 155 *A. 2d* 186 (*Sup. Ct.* 1959); *United States v.* 243.22 *Acres of Land*, 129 *F. 2d* 678 (2 *Cir.* 1942), *certiorari* denied *Lambert v. United States*, 317 *U. S.* 698, 63 *S. Ct.* 441, 87 *L. Ed.* 558 (1943); *United States v. Certain Lands*, 43 *F. Supp.* 578 (*D. C. E. D. N. Y.* 1942). *Manchester Housing Authority v. Fisk, supra*, is the closest to the present case, but not helpful to a resolution of the issue before us. There it was held that a condemning agency could proceed under one of several statutes which provided different procedures for the assessment of compensation without violating due process. I agree that the demands of due process were satisfied in that case. But that is not the issue before this court. The condemnee in *Manchester* evidently did not argue that he was denied equal protection of the law and the court nowhere considered his rights under that constitutional provision. Involved in the two New York cases was the provision of the New York Constitution that compensation for private property taken for public use "shall be ascertained by a jury, or by the Supreme Court without a jury * * *." It is true, as the majority states, that "Both courts recognized the right of the State to select any one of the methods outlined so long as it provided a fair and reasonable avenue to just compensation." But it was the *judiciary*, not the condemning agency, which selected the appropriate method for trial in those cases. This distinction is vital to a determination of whether the condemnees were afforded equal protection of the law. The trial judge, as an impartial decision-maker, could choose that procedure which he regarded as best adapted to a determination of just compensation, unmotivated by the litigious interest which might affect the condemning agency as party-plaintiff. A similar procedure is followed under Rule 71A of the Federal Rules of Civil Procedure. Ordinarily any party may have a jury trial on demand, but the court, *not the condemning agency*, may decide in its discretion that the peculiar circum-

stances of the case require a determination by appointed commissioners.

As mentioned above, the remainder of the cases which the majority cites for the proposition that a condemning agency may select one or another of several legislatively created procedures do not involve trial with or without a jury. More significantly, these cases concern a choice of procedures which by its nature could not involve a question of equal protection. *Union School District of City of Jackson v. Starr Commonwealth for Boys*, 322 *Mich.* 165, 33 *N. W.* 2d 807 (*Sup. Ct.* 1948) is typical. There the condemning agency was taking land for the erection of a school. Under one state statute, the agency was required first to negotiate with the condemnee before initiating condemnation proceedings. Under another statute negotiations prior to taking were unnecessary. The school district chose to proceed under the latter statute; and the Michigan Supreme Court held that the choice of procedure did not violate the condemnee's constitutional rights. As the majority here notes, the State or its agencies alone institute condemnation proceedings; the condemnee, except in rare instances, cannot. The right to take land by eminent domain *as distinct from determination of compensation* is so fundamental an attribute of sovereignty that, given an admitted public use, no hearing need be afforded a condemnee. It therefore seems to me that a condemnee cannot claim denial of equal protection because the condemning agency is afforded a choice of procedures for the taking. But that is not the issue here.

The majority has enunciated its adherence to a principle which should be dispositive of the case before us. It says:

"It is obvious in this instance that the proceeding prescribed for arriving at just compensation under the eminent domain act or under the airport terminal act is sufficient unto itself as a due process mechanism. Each one is designed to produce and is capable of producing a just result. No one suggests to the contrary. *If there were inequality within the framework of either procedure,* for example, if the Authority were given and the property owner were denied a right of appeal, [citations omitted] or the right to introduce

evidence of comparable sales, or offers to sell or purchase [citation omitted], in one mode of procedure which the condemnor had the option to select and did select in the particular case, *a deprivation of equal protection of law would exist.*" (Italics supplied)

The majority expressly says that a statute giving a condemning agency a unilateral right of appeal from a compensation award would be unconstitutional. The ultimate purpose of such an agency in appealing from an award is to achieve a redetermination of the compensation at a lower amount. Similarly, realistically viewed, it seems to me the Authority will exercise its option under *N. J. S. A.* 32:1–132 to elect that tribunal (judge or jury) which the Authority thinks will award a lower amount. In condemnation proceedings, therefore, where the only issue in dispute, as here, is the amount of compensation, a unilateral right to trial by jury is no less offensive than a unilateral right of appeal.

Applying logically to the facts of the present case the majority's principle that a unilateral option within the framework of a statutory procedure would be invalid, I take it that if *N. J. S. A.* 32:1–132, without reference to the Eminent Domain or Airport Terminal Acts, gave the Authority power to condemn land for approaches to bridges and tunnels *and* provided that the Authority *alone* might choose to have a judge or jury determine just compensation, the statute would be unconstitutional. It seems to me highly artificial to make a condemnee's rights under the equal protection clause depend on whether the Authority's option derives from the self-contained provisions of a single statute or from the incorporation by reference of procedures in two distinct statutes. In either case, the result and the effect upon the condemnee are the same. What the court said in *In re City of Rochester,* 224 *N. Y.* 386, 121 *N. E.* 102 (*Ct. App.* 1918), cited with approval by the majority, is particularly applicable to the present case:

"In the courts, parties similarly situated are entitled to equal rights and privileges. The Constitution forbids discrimination between them." *Id.,* 224 *N. Y.,* at *p.* 397, 121 *N. E.,* at *p.* 105.

The concept of fair play is the heart of equal protection; and it seems to me that fair play requires that the same officially prescribed advantages and disadvantages should be enjoyed or suffered by both parties to a law suit. I would therefore hold that N. J. S. A. 32:1–132, insofar as it affords to the Port of New York Authority alone the right to choose whether compensation for condemned property will be tried by jury, is unconstitutional as a denial of the condemnee's right to equal protection of the law. Accordingly, I would reverse the judgment below. I am authorized to say that Mr. Justice SCHETTINO joins in this dissent.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS and HALL—4.

*For reversal*—Justices PROCTOR and SCHETTINO—2.